USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 2/14/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
JENNY LAPUSHNER,

                              Plaintiff,

      -against-                                  18-CV-11530 (ALC)

ADMEDUS LTD., ET AL.,                       **OPINION & ORDER**

                              Defendants.

------------------------------------------------------------------x

**ANDREW L. CARTER, JR., District Judge:**

      Plaintiff Jenny Lapushner brings claims alleging sex discrimination, gender discrimination, sexual harassment, hostile work environment, retaliation, and wrongful termination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, the Administrative Code of the City of New York, and the laws of the State of New York. Defendants, Admedus Ltd., Admedus Corporation (collectively, "Admedus"), Joe Palianto, Christopher Olig, Wayne Paterson, David St. Denis, Benjamin Jensen, and Michael McGrath (collectively, "Individual Defendants") filed a motion to transfer the case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §1404(a), or in the alternative, a motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(2). For the reasons stated below, Defendants' motion to transfer is **GRANTED**, and therefore, the Court declines to address the motion to dismiss.[1]

## BACKGROUND

      Plaintiff was hired as a direct sales employee by Defendant Admedus to sell medical products to hospitals and healthcare providers in New York and New Jersey. Second Amended

---

[1] See Fort Knox Music, Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001) ("The district court has th[e] power to transfer venue [under §1404(a)] even if it lacks personal jurisdiction over the defendants.").

Complaint ("Comp.") ECF No. 59 at ¶23–24. Plaintiff alleges that throughout her employment, she was subject to discriminatory and sexually harassing comments and conduct. *Id.* at ¶25. This included, for example, that Defendant Olig greeted Plaintiff by kissing her on both cheeks, stared at her for long periods of time, and made efforts to be physically close to her at business meetings, *id.* at ¶26; that Defendant Palianto referred to Plaintiff's business contact as Plaintiff's "boyfriend," *id.* at ¶27; and that Defendant Olig made a demeaning comment about Plaintiff's dress during a business dinner, *id.* at ¶28. Additionally, Defendant Olig made "several offensive comments including asking another co-worker, Jim Lemle, about his sleeping arrangements with his wife in front of Plaintiff and a group of colleagues . . . at a business dinner, and making comments to Jim Lemle about masturbation." *Id.* at ¶29.

Plaintiff alleges that she reported this discrimination and harassment to Admedus's executive management and met with Defendant Paterson (Chief Executive Officer), Defendant St. Denis (Chief Operating Officer), Defendant Jensen (Chief Human Resources Officer), and Defendant McGrath (Vice President of Human Resources). *Id* at ¶31. Plaintiff alleges that after making her complaint, Defendants retaliated against her, including by criticizing her performance, micromanaging her, cancelling her important meetings, and disregarding her emails and other communications. *Id.* at ¶32–35. As part of this retaliation, Plaintiff alleges that Defendant St. Denis failed to appear for a business meeting with Columbia University, and that when Plaintiff reported this to Defendant Palianto, he told Plaintiff "I have a hard time taking direction from women." *Id.* at ¶36–37. Defendants also allegedly granted opportunities to her co-workers, refused to approval her travel expenses, and continued to ignore her complaints of discrimination. *Id.* at 39–42. Finally, on January 2, 2018, Defendants terminated Plaintiff. *Id.* at 43.

Defendant Admedus Ltd. is an Australian company with its principal place of business in Australia. Defendants' Memorandum of Law in Support ("Def. Memo") ECF No. 63 at 2. Defendant Admedus Corporation is domiciled in Minnesota and its principal place of business is in Minnesota, although the corporation conducts business across the nation, including in New York. *Id.* at 3. Defendants Olig, Paterson, and McGrath are residents of Minnesota and work for Defendant Admedus Corporation primarily in Minnesota. *Id.* Defendant Palianto is a resident of New Jersey and works for Defendant Admedus Corporation primarily in New Jersey. *Id.* Defendant St. Denis is a resident of Florida but works for Defendant Admedus primarily in Minnesota. *Id.* Defendant Jensen is a resident of Australia and worked for Admedus Ltd. in Australia. *Id.*

Plaintiff does not contest that "the business meetings and dinners at which the alleged sexual harassment occurred in Minnesota." *Id.* at 4. Admedus's corporate headquarters, where Plaintiff reported the alleged discrimination and met with the executive management of the organization, is also located in Minnesota. *Id.* Finally, many of the decisions about the alleged retaliatory conduct—including who attends customer meetings, travel expense approvals, and other employment-related decisions—originated out of Admedus's corporate headquarters in Minnesota. *Id.* at 5. Plaintiff notes, however, that all Defendants conduct business in the State of New York and that the individual Defendants attend business meetings and conferences in New York. Plaintiff's Memorandum of Law in Opposition ("Pl. Memo") ECF No. 71 at 2. Moreover, Plaintiff alleges that since she was a salesperson designated to New Jersey and New York, the impact of some of the retaliation occurred in New York. *See, e.g.,* Comp. at ¶¶ 27, 32–38.

Plaintiff filed her complaint on December 10, 2018, ECF No. 1, and filed an amended complaint on June 4, 2019, ECF No. 49. Defendant Admedus and the Individual Defendants filed

a motion to transfer the case to the District of Minnesota, or in the alternative, to dismiss the case pursuant to Rule 12(b)(2). ECF Nos. 51–58. Plaintiff then filed a second amended complaint. ECF No. 59. Accordingly, the Court dismissed Defendants' motions without prejudice and granted them leave to re-file their motions in response to Plaintiff's second amended complaint. ECF No. 62. Defendants filed the instant motions on July 30, 2019. ECF Nos. 63–68. Plaintiff opposed on August 13, 2019. ECF No. 71. Finally, Defendants replied on August 20, 2019. ECF No. 73.

## LEGAL STANDARD

District courts may transfer a civil action "[f]or the convenience of the parties and witnesses, in the interest of justice." *See* 28 U.S.C. § 1404(a); *Semente v. Empire Healthchoice Assurance, Inc.*, 2014 WL 4967193, at *1 (S.D.N.Y. Sept. 29, 2014) ("Even if venue is proper . . . the Court may still transfer the case to a more appropriate forum pursuant to Section 1404(a).") "[T]he purpose of [this] section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and quotation marks omitted). On a motion to transfer, "the burden is on the movant to show that the transfer is justified . . . . Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum . . . discretionary transfers are not favored." *Xiu Feng Li v. Hock*, 371 Fed.Appx. 171, 175 (2d Cir. 2010) (quotation marks and citations omitted). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

When considering a motion to transfer, courts must "[f]irst . . . determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F.Supp.2d 392, 394 (S.D.N.Y. 2006) (internal citations omitted).

Courts next consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (quotation omitted). "Courts also routinely consider judicial economy, the interest of justice, and 'the comparative familiarity of each district with the governing law.'" *Stein v. Teekay Corp.*, No. 16-CV-00345, 2016 WL 10490287, at *1 (D. Conn. Nov. 18, 2016) (citing *Synca Direct Inc. v. SCIL Animal Care Co.*, No. 15-CV-2332, 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015)). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (citations omitted).

## DISCUSSION

### I. This Action Could Have Been Brought in the District of Minnesota

"The first step in deciding a motion to transfer venue under § 1404(a) is to assess whether the action could have been brought in the transferee district." *De Souza v. JPMorgan Chase & Co.*, No. 12-CV-1738, 2013 WL 11313241, at *1 (S.D.N.Y. July 16, 2013). Here, the parties do not dispute that this matter could properly have been brought in the District of Minnesota. Nevertheless, the Court briefly addresses the strong evidence in the record suggesting that the District of Minnesota would indeed be a proper forum for this action.

"For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 401 (S.D.N.Y.

2004). As for subject-matter jurisdiction, Plaintiff brings claims for discrimination and retaliation under Title VII, and thus federal question jurisdiction is appropriate under 28 U.S.C. § 1331. As for personal jurisdiction, Defendants all either have their principal place of business in Minnesota, reside in Minnesota, or have continuous and systematic contacts with the State (e.g., are employed by Admedus and frequently conduct business and operations in Minnesota). These contacts with Minnesota are likely enough to establish "minimum contacts" with the State. *See Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn. 1995) ("The Minnesota long-arm statute permits courts to assert jurisdiction over defendants to the extent that federal constitutional requirements of due process will allow.") (citation omitted). Moreover, exercising personal jurisdiction over the Defendants in this case likely would not offend traditional notions of fair play and substantial justice. *Id.* Finally, as for venue, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. Much of the alleged harassment and discrimination occurred in Minnesota, and thus the District of Minnesota would likely be an appropriate venue for this case.

II. **Other Factors**

The factors set forth by the Second Circuit also favor transferring this case to the District of Minnesota. "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

1. **Plaintiff's Choice of Forum**

Plaintiff's choice of forum is "a decision that is given great weight." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). However, this weight is "significantly diminished" where "the operative facts have no connection to the chosen district," *Royal Ins. Co. of Am. v. United States*, 167 F.Supp.2d 573, 576 (S.D.N.Y. 2001), or where "plaintiff chooses a forum other

than her place of residence." *Intria Corp. v. Intira Corp.*, No. 00-CV-7198, 2000 WL 1745043, at *8 (S.D.N.Y. Nov. 27, 2000). Plaintiff resides in Morris County, New Jersey. Compl. at ¶7. Although Plaintiff alleges that the Southern District of New York is "the location of the operative facts that give rise to the causes of action alleged," this is incorrect. As discussed below, the locus of operative facts is in Minnesota. Thus, given that Plaintiff does not reside in New York and given that the operative facts have little connection to the Southern District of New York, "little weight is afforded to [Plaintiff's] choice to litigate in this District." *Pausch Medical GmBH v. Pausch LLC*, No. 14-cv-1945, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015) (citation omitted).

2. **Convenience of Witnesses**

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (quoting *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)). The Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 404 (S.D.N.Y.2005) (quotations omitted). The convenience of non-party witnesses is accorded more weight than that of party witnesses. *Id.* at 402.

The District of Minnesota would be more convenient for witnesses than would the Southern District of New York. Defendants Olig, Paterson, and McGrath are Minnesota residents and, as Defendants indicate, they will be important witnesses in this case and are expected to testify about Plaintiff's allegations. *See* Def. Memo at 9. These Defendants are particularly important because the bulk of Plaintiff's allegations are against Defendant Olig; and because Defendants Paterson and McGrath, as the Chief Executive Officer and Vice President of Human Resources, can testify

to how Admedus executives handled Plaintiff's reports of discrimination and harassment. Even the out-of-state witnesses do not reside in the Southern District of New York. Defendant St. Denis resides in Florida but his position with Admedus is based in Minnesota. Defendants Palianto and Jensen reside in New Jersey and Australia respectively, and Plaintiff resides in New Jersey. Plaintiff does not name any witnesses for whom the Southern District of New York would be a more convenient forum. Accordingly, the Court finds that the convenience of witnesses weighs strongly in favor of Defendants.[2]

### 3. Location of Relevant Documents

"In today's modern world of electronic documents, the location of relevant documents is a largely neutral factor." *Inventel Prod. LLC v. Penn LLC*, No. 16-CV-1649, 2017 WL 818471, at *4 (S.D.N.Y. Feb. 28, 2017) (citations omitted). However, to the extent this factor is still relevant, the Court notes that since Admedus has its principal place of business and headquarters in Minnesota, "Admedus's personnel files, complaint files, policies, and other records" are also located in Minnesota. Def. Memo at 14. These documents will likely be relevant to Plaintiff's claims of discrimination and harassment.

### 4. Locus of Operative Facts

"The location of operative events is a primary factor in determining a § 1404(a) motion." *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F.Supp.2d 473, 481 (S.D.N.Y. 2009). The majority of the discrimination and harassment alleged by Plaintiff occurred in Minnesota, including the dinners at which Plaintiff alleges she was harassed and meetings between her and Admedus executive officers. Def. Memo at 10–11. Moreover, any retaliatory measures taken by Admedus

---

[2] Since both parties agree that the witnesses largely overlap with the named defendants, the Court also finds that the "convenience of parties" factor weighs in favor of Defendants. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F.Supp.3d 385, 399 (S.D.N.Y. 2014) ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant.").

were coordinated and implemented from its corporate headquarters in Minnesota. The only alleged discrimination and harassment in New York was Defendant Palianto's comments referring to Plaintiff's business contact as Plaintiff's "boyfriend." Pl. Memo at 10.

Plaintiff argues that the effects of the retaliation by Admedus were felt by Plaintiff in New York, since she was primarily working in New York and was terminated from her employment there. *Id.* at 10–11. However, "[t]o determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016). Although the impact of the alleged discrimination was partly felt in New York, most of the events from which Plaintiff's discrimination and harassment claims arise—including the dinner meetings at which she was harassed, travel reimbursements decisions, e-mails, and the decision to terminate her—originated or were made in the District of Minnesota. Thus, this factor weighs in favor of Defendants.

5. **Relative Means of the Parties**

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004). Nevertheless, "a party arguing for or against transfer on these grounds must offer documentation to show that transfer would be unduly burdensome to his finances." *Seltzer v. Omni Hotels*, No. 09-cv-9115, 2010 WL 3910597, at *5 (S.D.N.Y. Sept. 30, 2010) (quotation omitted). Here, neither party has submitted any evidence or documentation detailing significant financial disparities, nor has either party alleged that transferring the case to Minnesota (or maintaining the case in New York) would be "unduly burdensome to [their] finances." *Id.* Thus, the Court finds this factor neutral.

## CONCLUSION

For the reasons set forth above, Defendants have demonstrated by clear and convincing evidence that the balance of convenience and the interests of justice strongly favor transferring this action to the District of Minnesota. Accordingly, Defendants' motion to transfer is **GRANTED** and the Court declines to address Defendants' motion to dismiss. The Clerk of the Court is respectfully directed to transfer this action to the United States District Court for the District of Minnesota for all further proceedings.

**SO ORDERED.**
**Dated:** February 14, 2020
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**