**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Jenny Lapushner,

    Plaintiff,

v.

Admedus Ltd., Admedus Corporation,
Joe Palianto, individually,
Christopher Olig, individually,
Wayne Paterson, individually,
David St. Denis, individually,
Benjamin Jensen, individually,
and Michael McGrath, individually,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 20-572 ADM/TNL

___

Emma R. Denny, Esq., and Amanda R. Crain, Esq., Halunen Law, Minneapolis, MN, on behalf of Plaintiff.

Elizabeth J. Roff, Esq., Brown & Carlson, P.A., Minneapolis, MN, on behalf of Defendants Admedus Ltd., Admedus Corporation, Wayne Paterson, David St. Denis, and Michael McGrath.

Jacob M. Tomczik, Esq., McCollum Crowley, P.A., Minneapolis, MN, on behalf of Defendants Joe Palianto, Christopher Olig, and Benjamin Jensen.

___

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendants Admedus Ltd., Admedus Corporation, Joe Palianto ("Palianto"), Christopher Olig ("Olig"), Wayne Paterson ("Paterson"), David St. Denis ("St. Denis"), Benjamin Jensen ("Jensen"), and Michael McGrath's ("McGrath") (collectively, "Defendants") Motion to Dismiss [Docket No. 86]. Defendants seek dismissal of Counts 3 through 10 of the Second Amended Complaint [Docket No. 59], which assert claims for sexual harassment, discrimination, and retaliation under New York state law and New York City municipal law. Defendants argue the

Counts must be dismissed because Minnesota law, rather than New York law, applies to this case. Defendants also argue that the individually named Defendants ("Individual Defendants") must be dismissed because the only Counts asserted against them are premised on New York law. Plaintiff Jenny Lapushner ("Lapushner") opposes the Motion. For the reasons set forth below, Defendants' Motion is granted.

## II.  BACKGROUND[1]

### A. Parties

Admedus Ltd. is an Australian company with its principal place of business in Australia. Transfer Order at 3. Admedus Corporation is domiciled in Minnesota and its principal place of business is in Minnesota, although the corporation conducts business across the nation, including in New York. Id. Olig, Paterson, and McGrath are residents of Minnesota and work for Admedus Corporation primarily in Minnesota. Id. Palianto is a resident of New Jersey and works for Admedus Corporation primarily in New Jersey. Id. St. Denis is a resident of Florida but works for Admedus Corporation primarily in Minnesota. Id. Jensen is a resident of Australia and worked for Admedus Ltd. in Australia. Id.

Lapushner is a New Jersey resident and former employee of Admedus Ltd. and Admedus Corporation (collectively, "Admedus"). Second Am. Compl. ¶¶ 7, 23, 43. Lapushner was hired by Admedus in May 2017 to sell medical products to hospitals and healthcare providers in New York and New Jersey. Id. ¶¶ 23-24. Admedus terminated Lapushner's employment in January 2018. Id. ¶ 43.

---

[1] The background of this case is set forth in the February 14, 2020 Order [Docket No. 76] ("Transfer Order") transferring the case from the United States District Court for the Southern District of New York to the District of Minnesota, and is incorporated by reference.

**B. Alleged Misconduct**

Lapushner alleges that throughout her employment with Admedus she was subject to discriminatory and sexually harassing comments and conduct. Id. ¶ 25. The conduct included Olig greeting Lapusher by kissing her on both cheeks, staring at her for long periods of time, and consistently making efforts to be physically close to her at business meetings. Id. ¶ 26. Olig also made a demeaning comment about Lapushner's dress during a business dinner on September 12, 2017. Id. ¶ 28. On another occasion, Olig made "several offensive comments including asking another co-worker, Jim Lemle, about his sleeping arrangements with his wife in front of Plaintiff and a group of colleagues . . . at a business dinner, and making comments to Jim Lemle about masturbation." Id. ¶ 29.

Additionally, St. Denis consistently winked at Lapushner in a sexual manner, making her uncomfortable. Id. ¶ 30. Lapushner also alleges that Palianto once referred to one of Lapushner's business contacts as her "boyfriend." Id. ¶ 30.

On September 14, 2017, Lapushner reported Olig's discriminatory and harassing comments to Admedus' corporate headquarters in Minnesota. Id. ¶ 31. She met with executive management including Paterson (Chief Executive Officer), St. Denis (Chief Operating Officer), Jensen (Chief Human Resources Officer), and McGrath (Vice President of Human Resources) about the alleged discrimination. Id. Lapushner alleges that shortly after making her complaint, Defendants retaliated against her by criticizing her performance, micromanaging her, cancelling her important meetings, limiting her sales opportunities, and disregarding her emails and other communications. Id. ¶¶ 32–35. As part of this retaliation, Lapushner alleges that St. Denis failed to appear for a business meeting with Columbia University, and that when Lapushner

reported this to Palianto, he told her "I have a hard time taking direction from women."  Id. ¶¶ 36–37.  Defendants also allegedly granted sales opportunities to Lapushner's co-workers instead of her, refused to approve Lapushner's travel expenses, denied her requests to use accrued paid time off, and continued to ignore her complaints of discrimination.  Id. ¶¶ 39–42.  On January 2, 2018, Admedus terminated Lapushner's employment.  Id. ¶ 43.

**C.  Present Action**

On December 10, 2018, Lapushner filed this action in the United States District Court for the Southern District of New York.  See Complaint [Docket No. 1].  Counts 1 and 2 assert claims against Admedus under Title VII for alleged discrimination and retaliation.  Second Am. Compl. ¶¶ 51–56.  Counts 3 to 10 assert claims against all Defendants under New York state law and the New York City Administrative Code for alleged discrimination and retaliation.  Id. ¶¶ 57–82.

On February 14, 2020, United States District Judge Andrew L. Carter, Jr. granted Defendants' motion to transfer the venue of this case to Minnesota.  See generally Transfer Order.  In ruling that the case should be transferred, Judge Carter noted that "the locus of operative facts is in Minnesota."  Id. at 7.  Specifically, Judge Carter found:

> Although the impact of the alleged discrimination was partly felt in New York, most of the events from which [Lapushner's] discrimination and harassment claims arise—including the dinner meetings at which she was harassed, travel reimbursement decisions, e-mails, and the decision to terminate her—originated or were made in the District of Minnesota.

Id. at 9.

Defendants now move to dismiss Counts 3 through 10, arguing that Minnesota law, not New York law, applies to this action.  Defendants further argue that because Minnesota law applies, the Individual Defendants must be dismissed because the Counts against them (Counts 3

4

through 10) are all based on New York law.[2]  Lapushner opposes the Motion, arguing that a choice of laws analysis is premature at the motion to dismiss stage, that no conflict of laws exists, and that even if there were a conflict, New York law would apply.

### III.  DISCUSSION

**A.  Standard of Review**

Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879–80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  The Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

A pleading must relate "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

---

[2] In their reply brief, Defendants also argue the factual allegations against the Individual Defendants are insufficient to state a plausible claim upon which relief may be granted under either Minnesota or New York law.  Defs.' Reply Br. [Docket No. 95] at 12–14.  Because this argument was not asserted in Defendants' opening brief and was raised for the first time in the reply brief, the Court declines to consider it.  See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 878 (D. Minn. 2007) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.").

5

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Choice of Laws

A federal district court sitting in diversity must apply the choice of law rules of the state in which it presides. Klaxon Co. v. Stentor Elec. Mfg. Co., 61 S. Ct. 1020, 1021 (1941); Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 928 (8th Cir. 1999). "Before applying a choice-of-laws analysis, a court must determine that a true conflict exists and ensure that both states' laws can be constitutionally applied." Kolberg-Pioneer, Inc. v. Belgrade Steel Tank Co., 823 N.W.2d 669, 672 (Minn. Ct. App. 2012) (citing Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 93–94 (Minn. 2000); Jepson v. Gen. Cas. Co. of Wisc., 513 N.W.2d 467, 469 (Minn. 1994). If an actual conflict exists and the laws of both states can be constitutionally applied, the court considers five factors to determine which law should govern: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." Jepson, 513 N.W.2d at 470 (Minn. 1994) (citing Milkovich v. Saari, 203 N.W.2d 408, 412 (1973)).

As an initial matter, Lapushner argues that it is premature at the motion to dismiss stage

to resolve a choice of law issue because deciding which state's law to apply is a fact-intensive analysis that cannot be resolved prior to discovery. Lapushner contends that discovery is needed to determine where the events in question occurred, where relevant acts and omissions took place, where the impacts of the acts and omissions were felt, and where Defendants' decisions regarding Lapushner's employment were made. Lapushner argues that without such discovery the Court lacks sufficient information to engage in a choice of laws analysis.

This argument lacks persuasion because the Second Amended Complaint and the Transfer Order answer the questions of location of where various events occurred that Lapushner's proposed discovery would address. The Second Amended Complaint and Transfer Order establish: (1) all alleged incidents of sexual harassment occurred at business meetings and dinners in Minnesota, with the exception of Palianto's alleged comments in New York; (2) Lapushner reported the discrimination in Minnesota; (3) although the impact of the alleged discrimination was partly felt in New York, most of the events from which Lapushner's discrimination and harassment claims arise originated in Minnesota; and (4) most of the decisions about the retaliatory conduct, including attendance at customer meetings, travel expense approvals, and other employment-based decisions, were made at Admedus' headquarters in Minnesota. See Transfer Order at 3, 8–9; Second Am. Compl. ¶¶ 27, 28–34, 38–40, 42–43. Thus, the Court has sufficient information pertaining to relevant contacts with Minnesota and New York to conduct a choice of choice of laws analysis.

### 1. Whether a Conflict Exists

Defendants argue that an actual conflict exists between New York and Minnesota law because an employee or agent may be individually liable for harassment or discrimination under

New York City Administrative Code 8-107(1), whereas only "an employer" may be liable under Minnesota Statute § 363A.08, subd. 2.

Lapushner responds that no conflict exists because Minnesota, like New York, imposes individual liability on those who aid and abet employment-based discrimination or who engage in retaliation. For example, Minn. Stat. § 363A.14 imposes individual liability "for any person . . . intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by" the Minnesota Human Rights Act ("MHRA"). Similarly in New York, it is unlawful "for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under" the human rights laws of New York City and the State of New York. See N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code 8-107(6). Minnesota law also imposes liability "for any individual who participated in the alleged discrimination as a perpetrator, employer, . . . or employee or agent thereof to intentionally engage in any reprisal against any person . . . ." Minn. Stat. § 363A.15. New York City and the State of New York have similar reprisal statutes. See N.Y. Exec. Law § 296(7); N.Y.C. Admin Code 8-107(7). Lapushner thus contends that because New York and Minnesota law both impose individual liability, no conflict exists and a choice of law analysis is not necessary.

Lapushner's argument actually favors applying Minnesota law, because if no conflict of law exists the law of the forum state applies. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (quoting Wood v. Mid–Valley Inc., 942 F.2d 425, 426 (7th Cir.1991)) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."); In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005) ("There is, of course, no constitutional

8

injury to out-of-state plaintiffs in applying Minnesota law unless Minnesota law is in conflict with the other states' laws. Therefore, we must first decide whether any conflicts actually exist."); Miller v. A.N. Webber, Inc., 484 N.W.2d 420, 422 (Minn. Ct. App. 1992), review denied (Minn. June 10, 1992) ("Where a conflict of law question has not been raised, Minnesota law will govern.").

The Court finds that an actual conflict exists between New York law and the MHRA as to an individual's direct liability for harassment or discrimination. An employee or agent may be directly liable for harassment or discrimination under New York City Administrative Code 8-107(1), whereas only an employer may be directly liable for harassment or discrimination under Minn. Stat. § 363A.08, subd. 2. Because at least one conflict between New York and Minnesota law exists, the Court will proceed to the next step of the conflict of laws analysis without reaching the issue of whether New York and Minnesota's aiding and abetting or reprisal statutes are also in conflict.

### 2. Whether Both States' Laws can be Constitutionally Applied

The parties dispute whether both states' laws can be constitutionally applied. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Jepson, 513 N.W.2d at 469–70 (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312–13 (1981)).

Lapushner contends that Minnesota law cannot constitutionally govern this action because she has never resided or worked in Minnesota and thus lacks standing to assert claims under the MHRA. A plaintiff must reside or work in Minnesota to have standing to bring a

9

claim under the MHRA. Bernard v. St. Jude Med. S.C., Inc., 398 F. Supp. 3d 439, 467 (D. Minn. 2019); Wilson v. CFMOTO Powersports, Inc., No. 15-3192, 2016 WL 912182, at *5 (D. Minn. Mar. 7, 2016); Longaker v. Boston Sci. Corp., 872 F. Supp. 2d 816, 819 (D. Minn. 2012), aff'd, 715 F.3d 658 (8th Cir. 2013); see also Minn. Stat. § 363A.03, subd. 15 (defining "employee" as an individual "who resides or works in this state").

Because Lapushner resides in New Jersey, her standing to bring a MHRA claim turns on whether she "works" in Minnesota. Although Lapushner's sales territory did not include Minnesota, she attended trainings and business meetings in Minnesota, communicated with management located in Minnesota, and suffered alleged harassment and discrimination in Minnesota. These ongoing and significant connections to Minnesota are sufficient to constitute working in the state. See Wilson, 2016 WL 912182, at *6 (holding that a plaintiff who resided in Kentucky and whose sales region was not in Minnesota sufficiently alleged that he "worked" in Minnesota because he was required to attend trainings in Minnesota, regularly communicated with Minnesota employees by phone and email, his supervisors were located in Minnesota, and the discriminatory conduct occurred in Minnesota). Accordingly, Lapushner has standing to assert claims under the MHRA. The significant aggregation of Lapushner's contacts with Minnesota also establishes that application of Minnesota law is constitutional and not arbitrary or fundamentally unfair.

Defendants argue that New York law cannot be constitutionally applied because Defendants lack sufficient contacts with New York state and New York City to be subject to New York's laws. Although a closer call, the Court finds that New York law can be constitutionally applied in this case. Lapushner performed work on Admedus' behalf in New

York, at least one harassing comment was made in New York, and the impact of Defendants' allegedly discriminatory conduct was partially felt in New York. Thus, both states' laws can be constitutionally applied.

### 3. Choice Influencing Factors

Having concluded that a conflict exists between Minnesota and New York law and that either may be constitutionally applied, the Court next considers the five choice influencing factors set forth in Milkovich v. Saari, 203 N.W.2d at 412. The factors are: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) the better rule of law. Id.

The first factor, predictability of result, "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." Nodak, 604 N.W.2d at 94. "However, "predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." Id. Alleged harassment, discrimination, and retaliation are not consensual transactions. Thus, predictability of results does not favor either forum. See, e.g., id. at 95 ("[A]utomobile accidents are not consensual transactions, nor is this a contract case, and therefore predictability favors neither forum.").

The second factor, maintenance of interstate order, is "primarily concerned with whether the application of Minnesota law would manifest disrespect for [New York's] sovereignty or impede the interstate movement of people and goods." Jepson, 513 N.W.2d at 471. The focus is on "maintain[ing] a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." Id.

11

In analyzing this factor, "a court looks at the contacts the state has with the issues being litigated." Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1394 (8th Cir. 1997). Here, Judge Carter has already found that "the locus of operative facts is in Minnesota," "[Lapushner] does not reside in New York," and "the operative facts have little connection to the Southern District of New York." Transfer Order at 7. Applying Minnesota law under these circumstances would not impede on New York's sovereignty. This factor favors Minnesota law.

The third factor, simplification of the judicial task, considers the ease of the courts in administering another states' laws. Milkovich, 203 N.W.2d at 412. "Although Minnesota courts are fully capable of applying the law of another state, the judicial task is obviously simplified when a Minnesota court applies Minnesota law." Medtronic, Inc. v. Advanced Bionics Corp., 630 N.W.2d 438, 455 (Minn. Ct. App. 2001) (internal quotations omitted). This factor weighs in favor of applying Minnesota law.

The fourth factor, advancement of the forum's governmental interests, addresses "which choice of law most advances a significant interest of the forum." Jepson, 513 N.W.2d at 472. Although both Minnesota and New York law are directed at prohibiting sexual harassment and discrimination, the Minnesota legislature has opted not to hold individual employees directly liable for harassment and discrimination. This policy decision is best advanced by applying Minnesota law.

The fifth factor, application of the better rule of law, is only applied when the other factors do not resolve the choice of law issue. Medtronic, Inc., 630 N.W.2d at 455. As the second, third, and fourth factors weigh in favor of applying Minnesota law, the Court will not address this final factor.

Based on the choice of laws analysis, the Court concludes that Minnesota law applies to this case. Accordingly, Counts 3 through 10 are dismissed because they are based on New York law. The remaining Counts (Counts 1 and 2) apply only to Admedus and not to the Individual Defendants. As no viable cause of action remains against the Individual Defendants, they are dismissed from this case.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Joint Motion to Dismiss [Docket No. 86] is **GRANTED**;

2. Counts 3 through 10 of the Second Amended Complaint [Docket No. 59] are **DISMISSED** without prejudice; and

3. Individual Defendants Joe Palianto, Christopher Olig, Wayne Paterson, David St. Denis, Benjamin Jensen, and Michael McGrath are **DISMISSED** without prejudice.

BY THE COURT:

   s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 31, 2020